IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Christine M. Arguello

Civil Action No. 18-cv-02624-CMA

ESMERALDA M. GONZALES, *for Steven Gonzales (deceased)*,

    Plaintiff,

v.

ANDREW SAUL, *Commissioner of Social Security*,

    Defendant.

**ORDER REVERSING DENIAL OF SOCIAL SECURITY BENEFITS**

This matter is before the Court on review of the Social Security Commissioner's decision denying Plaintiff Esmeralda Gonzales' application for social security benefits. Jurisdiction is proper under 42 U.S.C. § 405(g). For the following reasons, the Court reverses the decision of the Commissioner.

I.  **BACKGROUND**

Esmeralda Gonzales' husband, Steven Gonzales, filed an application for supplemental security income on May 6, 2011, after he suffered a brain injury in a mugging incident that left him in a coma for a month. (Doc. # 13 at 84.)[1] On March 13, 2013, an Administrative Law Judge ("ALJ") issued a decision that found that Mr.

---

[1] All the exhibits filed at Doc. # 13 constitute the Administrative Record in this matter. The Court cites to the docket number of the record (e.g., "Doc. # 13") and the page number from the Administrative Record (e.g., "at 84"). The page numbers are reflected in the upper right-hand corner of each page in the Administrative Record.

Gonzales was disabled for purposes of the Social Security Act. Unfortunately, Mr. Gonzales passed away less than two months later. His death resulted in an underpayment of his social security benefits. *See* 20 C.F.R. § 416.536 (defining underpayment).

At issue is whether Mrs. Gonzalez may receive the underpayment of Mr. Gonzales' benefits as his surviving spouse. The Code of Federal Regulations provides that where, as here, a social security beneficiary dies before the Social Security Administration pays all of the benefits to which the recipient is entitled, the Administration will "pay the amount due to the deceased recipient's . . . surviving spouse who was living with the underpaid recipient . . . in the month he or she died or within 6 months immediately preceding the month of death." 20 C.F.R. § 416.542(b)(1). Accordingly, Mrs. Gonzales appeared at a hearing before an ALJ on June 23, 2017, and she presented evidence which purported to show that she and her husband were living together at the time of his death.

That evidence included Mrs. Gonzales' own testimony, as well as statements from friends and neighbors who had knowledge of the couple's living arrangements at the time of Mr. Gonzales' death. Mrs. Gonzales explained that she and her husband moved in with his sister after Mr. Gonzales was released from the hospital as a result of his brain injury in 2011. (Doc. # 13 at 104.) In December of the same year, they moved into a friend's house because Mr. Gonzales relapsed into alcoholism, which upset his sister and led her to increase their rent. However, once their friend passed away from cancer in April 2012, Mrs. Gonzales moved in with her daughter, and Mr. Gonzales

experienced a period of homelessness because "he was tired of living with people," and he was upset that he "couldn't contribute to anything . . . ." (*Id*. at 105.)

In November 2012, Mrs. Gonzales secured Section 8 housing, and she indicated that the couple moved into that residence. She did not include Mr. Gonzales on the housing application because she was concerned that they would be denied housing due to his driving record, which had occurred in prior applications. (*Id*. at 107.) Mr. Gonzales passed away at that residence on May 4, 2013. (*Id*. at 38.)

Throughout this time period, Mrs. Gonzales indicated that she and her husband used different addresses for receiving their mail because they were moving so frequently. (*Id*. at 106.) Mr. Gonzales always used his sister's address, and Mrs. Gonzales used her mother's address. Mrs. Gonzales stated, "[t]he only thing we ever got where we lived was usually the utility bills and things like that." (*Id*.)

In a decision issued on November 16, 2017, the ALJ concluded that Mrs. Gonzales was not entitled to receive Mr. Gonzales' unpaid benefits because Mr. and Mrs. Gonzales "were not living together in the same household at the time of his death or for six months prior to his death." (*Id*. at 17.) The ALJ's decision was largely based on written statements that Mr. and Mrs. Gonzales made to the Social Security Administration on March 26, 2013 ("March 26, 2013 documents"). (*Id*. at 14.)

Specifically, in the course of her application to become her husband's representative payee, Mrs. Gonzales indicated that her home and mailing addresses were both 3621 Olive Street in Denver, Colorado. (*Id*. at 33.) However, the address of the residence that Mrs. Gonzales secured in November 2012 was 5490 E 60th Ave in

Commerce City, Colorado. (*Id*. at 14.) Mrs. Gonzales also stated that her husband lived alone at 2116 S Zenobia Street in Denver, which was his sister's address. (*Id*. at 33, 106.) The ALJ noted that "[t]he March 26, 2013, documents instruct the claimant and his wife to report any changes in their residence, but the claimant's wife did not provide any further information until after she learned she was not eligible for the lump-sum death payment and the SSI underpayment." (*Id*. at 15.)

Thereafter, Mrs. Gonzales sought review of the ALJ's decision from the Social Security Administration Appeals Council. However, her request for review was denied, and the ALJ's decision became the final decision of the Commissioner of Social Security. This appeal followed.

## II. STANDARD OF REVIEW

When reviewing the Commissioner's decision, this Court is limited to determining "whether the findings are supported by substantial evidence and whether the Secretary applied the correct legal standards." *Pacheco v. Sullivan*, 931 F.2d 695, 696 (10th Cir. 1991); *see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). The Supreme Court has defined "substantial evidence" as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consol. Edison Co. of N.Y. v. NLRB*, 305 U.S. 197, 217 (1938). "[T]he **threshold for such evidentiary sufficiency is not high**." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (emphasis added). Substantial evidence is "more than a scintilla, but less than a preponderance." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). Thus, a decision is not based on

4

substantial evidence "if it is overwhelmed by other evidence in the record." *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009) (internal quotation marks omitted).

In reviewing the record to make the substantial evidence determination, the Court "may not reweigh the evidence nor substitute [its] judgment for the Secretary's." *Glass v. Shalala*, 43 F.3d 1392, 1395 (10th Cir. 1994). In addition, the Court "may not displace the agency's choice between two fairly conflicting views, even though the [C]ourt would justifiably have made a different choice had the matter been before it de novo." *Lax*, 489 F.3d at 1084 (quotation marks and citation omitted). Also, the Court "defer[s] to the ALJ on matters involving the credibility of witnesses." *Glass v. Shalala*, 43 F.3d 1392, 1395 (10th Cir. 1994).

Additionally, "[f]ailure to apply the correct legal standard or to provide this [C]ourt with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal." *Byron v. Heckler*, 742 F.2d 1232, 1235 (10th Cir. 1984); *see also Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993). "There are specific rules of law that must be followed in deciding whether evidence is substantial in these disability cases." *Frey v. Bowen*, 816 F.2d 508, 512 (10th Cir. 1987).

However, not every error in evaluating evidence or applying the correct legal standard warrants reversal or remand. "Courts may not reverse and remand for failure to comply with a regulation without first considering whether the error was harmless." *Bornette v. Barnhart*, 466 F. Supp. 2d 811, 816 (E.D. Tex. 2006); *see also Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir. 2004) (recognizing that the Tenth Circuit has "specifically applied [the principle of harmless error] in social security disability cases"

and collecting cases). Harmless error exists where it is "inconceivable" that a different administrative conclusion would have been reached absent the error. *Frank v. Barnhart*, 326 F.3d 618, 622 (5th Cir. 2003).

### III. DISCUSSION

The ALJ's decision that Mr. and Mrs. Gonzales were not living together at the time of Mr. Gonzales' death is not supported by substantial evidence. The Commissioner has a general burden, "in addition to discussing the evidence supporting her decision, to 'discuss the uncontroverted evidence [s]he chooses not to rely upon, as well as significantly probative evidence [s]he rejects.'" *Grogan v. Barnhart*, 399 F.3d 1257, 1266 (10th Cir. 2005) (quoting *Clifton v. Chater*, 79 F.3d 1007, 1010 (10th Cir. 1996)). Moreover, "[e]vidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." *Id*. at 1261–62. Accordingly, "it is more than merely 'helpful' for the ALJ to articulate reasons (e.g., lack of credibility) for crediting or rejecting particular sources. It is **absolutely essential** for meaningful appellate review." *Zblewski v. Schweiker*, 732 F.2d 75, 79 (7th Cir. 1984) (emphasis added).

In the instant case, the following evidence in the record supports Mrs. Gonzales' contention that she was living with her husband at the time of his death:

- Mrs. Gonzales' testimony that, at the time of his death, she and her husband were living together at 5490 E 60th Ave in Commerce City, Colorado, and that they maintained different mailing addresses because they were moving so often (Doc. # 13 at 106–107);

- Mr. Gonzales passed away while physically present at 5490 E 60th Ave (*id*. at 38);

6

- Linda Bowman's (Mr. Gonzales' sister) statement that "when he passed away . . . [Mr. and Mrs. Gonzales] lived together at 5490 E 60th . . . ." (*Id*. at 43);
- Concha Maldonado's (Mrs. Gonzales' mother) statement confirming that Mrs. Gonzales used Ms. Maldonado's address for mailing purposes only (*id*. at 48);
- Gary Gonzales' (an unrelated neighbor) statement that Mr. Gonzales lived with Mrs. Gonzales at 5490 E 60th "until [Mr. Gonzales] passed away," and that he could "attest that [Mr. Gonzales] was there every day the month of April because we hung out every day, he would come over all the time to visit . . . ." (*Id*. at 49).

The foregoing evidence overwhelms the only evidence that the ALJ cites in support of the conclusion that Mr. and Mrs. Gonzales were not living together—i.e., the March 26, 2013 documents that state separate addresses for the couple. (*Id*. 14–15.) However, the ALJ did not meaningfully discuss the significantly probative evidence that she rejected. Rather, the ALJ merely indicated that "[t]he undersigned carefully considered the written statements from family and neighbors but does not consider them to be persuasive." (*Id*. at 15.)

The ALJ's cursory analysis is insufficient to justify disregarding the evidence that supports Mrs. Gonzales' position. As a consequence, the Court is left to speculate as to whether, or why, the ALJ found Gary Gonzales' statement regarding his own observations to be "unpersuasive," because the ALJ did not offer any reasons to discount the veracity of Gary Gonzales' statement. Broadly concluding that "[t]he March 26, 2013 documents, . . . are more probative of the claimant's living situation at that time" (*id*.) does not demonstrate that Gary Gonzales, or the other witnesses, were being

7

untruthful or that they were incredible of being believed. Similarly, the ALJ did not make any specific findings as to Mrs. Gonzales' credibility as a witness.

In summary, the ALJ's decision is not supported by substantial evidence because it is overwhelmed by other evidence in the record, and the ALJ did not adequately explain her reasons for disregarding evidence that was averse to her conclusion. *Cf. Hartness v. Berryhill*, No. 1:17-CV-00176-MR, 2018 WL 3870195, at *3 (W.D.N.C. Aug. 14, 2018) (substantial evidence supported finding that surviving spouse was not living with deceased claimant when a no-contact order arising out of a domestic violence incident with the claimant was in effect at the time of the claimant's death, there was evidence the claimant had been living with a third party, and there was "**simply no evidence** in the record that the Plaintiff was living in the same household with the decedent at the time of death or that the Plaintiff's absence qualified as being only temporary." (emphasis added)).

Therefore, because the overwhelming evidence in the record establishes that Mr. and Mrs. Gonzales were living together at the time of Mr. Gonzales' death, the Court remands this case to the Commissioner for an award of benefits. *Salazar v. Barnhart*, 468 F.3d 615, 626 (10th Cir. 2006) (remand for award of benefits is proper when, "given the available evidence, remand for additional fact-finding would [not] serve [any] useful purpose but would merely delay the receipt of benefits." (quoting *Harris v. Sec'y of Health & Human Servs.*, 821 F.2d 541, 545 (10th Cir. 1987))).

## IV.  CONCLUSION

Based on the foregoing, it is ORDERED that this case is REVERSED AND REMANDED to the Commissioner for an immediate award of benefits to Mrs. Gonzales.

DATED: March 17, 2020

BY THE COURT:

CHRISTINE M. ARGUELLO
United States District Judge